UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

2013-1341

―――――――――――――――――――――――――――――――――――――――

PATENT HARBOR, LLC,

*Plaintiff-Appellant,*

v.

AUDIOVOX CORPORATION and
AUDIOVOX ELECTRONICS CORPORATION,

*Defendants-Appellees,*

and

RADIOSHACK CORPORATION,

*Defendant-Appellee,*

and

VIZIO, INC.,

*Defendant-Appellee,*

and

IMATION CORPORATION,

*Defendant-Appellee,*

and

BEST BUY CO., INC.,

*Defendant-Appellee,*

and

DENON ELECTRONICS (USA), LLC,

*Defendant-Appellee.*

―――――――――――――――――――――――――――――――――――――――

Appeal from the United States District Court for the Eastern District of Texas in
Case No. 10-CV-0361, Magistrate Judge John D. Love

―――――――――――――――――――――――――――――――――――――――

**PRINCIPAL BRIEF FOR DEFENDANTS-APPELLEES AUDIOVOX
CORPORATION, AUDIOVOX ELECTRONICS CORPORATION,
RADIOSHACK CORPORATION, VIZIO, INC., IMATION
CORPORATION, BEST BUY CO., INC., AND DENON ELECTRONICS
(USA), LLC**

―――――――――――――――――――――――――――――――――――――――

820439

Adrian M. Pruetz
apruetz@glaserweil.com
Charles C. Koole
ckoole@glaserweil.com
GLASER WEIL FINK JACOBS
HOWARD AVCHEN & SHAPIRO
LLP
10250 Constellation Boulevard, 19th
Floor
Los Angeles, CA 90067
Tel.: (310) 553-3000
Fax: (310) 556-2920
Counsel for Defendant-Appellee
VIZIO, INC.

Emmett J. McMahon
ejmcmahon@rkmc.com
ROBINS, KAPLAN, MILLER &
CIRESI LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Counsel for Defendant-Appellee
BEST BUY CO., INC.

John M. Jackson
jjackson@jw.com
Christopher J. Rourk
crourk@jw.com
Matthew C. Acosta
macosta@jw.com
JACKSON WALKER LLP
901 Main Street, Suite 6000
Dallas, TX 75202
Counsel for Defendant-Appellee
DENON ELECTRONICS (USA),
LLC

Anton N. Handal
anh@handal-law.com
Gabriel G. Hedrick
ghedrick@handal-law.com
HANDAL & ASSOCIATES
1200 Third Avenue, Suite 1321
San Diego, CA 92101
Counsel for Defendant-Appellee
IMATION CORPORATION

Christopher M. Joe
chris.joe@bjciplaw.com
BUETHER JOE & CARPENTER,
LLC
1700 Pacific Avenue, Suite 4750
Dallas, TX 75201
Counsel for Defendant-Appellee
RADIOSHACK CORPORATION

D. Joseph English
djenglish@duanemorris.com
Kristina Caggiano
kcaggiano@duanemorris.com
DUANE MORRIS LLP
505 9th Street, N.W., Suite 1000
Washington, DC 20004
Counsel for Defendants-Appellees
AUDIOVOX CORPORATION and
AUDIOVOX ELECTRONICS
CORPORATION

## CERTIFICATE OF INTEREST OF DEFENDANT-APPELLEE VIZIO, INC.

Pursuant to Federal Circuit Rule 47.4, counsel for VIZIO, Inc. ("VIZIO") certifies that:

1.      The full name of every party or amicus represented by me is:

VIZIO, Inc.

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

AmTRAN Technology Co., Ltd., a publicly traded Taiwanese company, owns 10 percent or more of VIZIO's stock.

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Glaser Weil Fink Jacobs Howard Avchen & Shapiro LLP

Pruetz Law Group LLP

Lee Tran & Liang APLC

Adrian M. Pruetz

Erica J. Van Loon

Charles C. Koole

Steven R. Hansen

DATED:  August 19, 2013

GLASER WEIL FINK JACOBS
        HOWARD AVCHEN & SHAPIRO LLP

By: _____

ADRIAN M. PRUETZ
*Attorneys for Defendant-Appellee*
*VIZIO, Inc.*

820439

## <u>CERTIFICATE OF INTEREST OF DEFENDANTS-APPELLEES</u>

## <u>AUDIOVOX CORPORATION AND AUDIOVOX ELECTRONICS</u>

## <u>CORPORATION</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Audiovox Corporation and Audiovox Electronics Corporation (collectively, "Audiovox") certifies that:

1.      The full name of every party or amicus represented by me is:

Audiovox Corporation (Audiovox Corporation recently changed its name to VOXX International Corporation)

Audiovox Electronics Corporation

2.      The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.      All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

None, with respect to Audiovox Corporation

VOXX International Corporation, with respect to Audiovox Electronics Corporation

4.      The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

820439

Duane Morris LLP

D. Joseph English

Russell Brandon Bundren

Thomas Sankey

Kristina Caggliano


DATED: August 19, 2013        DUANE MORRIS LLP

By: _____
    Kristina Caggiano
    *Attorneys for Defendants-Appellees*
    *Audiovox Corporation and Audiovox*
    *Electronics Corporation*

## <u>CERTIFICATE OF INTEREST OF DEFENDANT-APPELLEE</u>

## <u>BEST BUY CO., INC.</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Best Buy Co., Inc. ("Best Buy") certifies that:

1.     The full name of every party or amicus represented by me is:

Best Buy Co., Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party of amicus curiae represented by me are:

N/A

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Robins, Kaplan, Miller & Ciresi L.L.P.

Emmett J. McMahon

Melissa A. Goodman

Ryan M. Schultz

Coghlan Crowson, LLP

Rickey L. Faulkner

DATED: August 15, 2013

ROBINS, KAPLAN, MILLER & CIRESI
L.L.P.

By: _____
Emmett J. McMahon
*Attorneys for Defendant-Appellee*
*Best Buy Co., Inc.*

## <u>CERTIFICATE OF INTEREST OF DEFENDANT-APPELLEE DENON</u>

## <u>ELECTRONICS (USA), LLC</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Denon Electronics (USA), LLC ("Denon") certifies that:

1.     The full name of every party or amicus represented by me is:

     Denon Electronics (USA), LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

     N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

     Denon Electronics (USA), LLC is a wholly owned subsidiary of

     D&M Holdings, U.S. Inc.  No other publicly-held corporation owns

     10 percent of more of Denon Electronics (USA), LLC

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

     Jackson Walker LLP

     John M. Jackson

     Chris J. Rourk

Matt Acosta

DATED: August 15, 2013

JACKSON WALKER LLP

By: _____

JOHN M. JACKSON
*Attorneys for Defendant-Appellee*
*Denon Electronics (USA), LLC*

819276

# <u>CERTIFICATE OF INTEREST OF DEFENDANT-APPELLEE</u>

# <u>IMATION CORP.</u>

Pursuant to Federal Circuit Rule 47.4, counsel for Imation Corp. ("Imation") certifies that:

1.    The full name of every party or amicus represented by me is:

Imation Corp.

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party of amicus curiae represented by me are:

TDK Corporation

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Handal & Associates

Anton N. Handal

Gabriel G. Hedrick

Pamela C. Chalk

820439

DATED:  August ___, 2013          HANDAL & ASSOCIATES

By: _____
        Anton N. Handal
        *Attorneys for Defendant-Appellee*
        *Imation Corp.*

819276

## CERTIFICATE OF INTEREST OF DEFENDANT-APPELLEE

## RADIOSHACK CORPORATION

Pursuant to Federal Circuit Rule 47.4, counsel for RadioShack Corporation ("RadioShack") certifies that:

1.    The full name of every party or amicus represented by me is:

RadioShack Corporation

2.    The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.    All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party of amicus curiae represented by me are:

None

4.    The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Buether Joe & Carpenter, LLC

Christopher M. Joe

DATED: August 15, 2013      BUETHER JOE & CARPENTER, LLC

By: _____

CHRISTOPHER M. JOE
*Attorneys for Defendant-Appellee*
*RadioShack Corporation*

# TABLE OF CONTENTS

Page

I.   STATEMENT OF THE ISSUE ................................................. 1

II.  STATEMENT OF THE FACTS ............................................. 1

    A.   The Procedural History and Proposed Constructions ...................... 1

    B.   The Claims of the '992 Patent ........................................ 2

    C.   Brief Description of the '992 Patent ................................. 3

    D.   Brief Description of the '514 Patent ................................ 9

    E.   The Prosecution History ........................................... 10

        1.   The Prosecution History of the '514 Patent ....................... 10

            a.   May 16, 1994 Preliminary Amendment .................... 10

            b.   May 12, 1995, April 16, 1996, and October 30, 1996 Office Actions.................................... 12

        2.   The Prosecution History of the '992 Patent ....................... 14

            a.   January 7, 1999 Response ............................. 14

            b.   January 11, 1999 Office Action.................................... 14

III.  SUMMARY OF THE ARGUMENT ....................................... 15

IV.  ARGUMENT................................................................ 19

    A.   Claim 2 of the '992 Patent is Directed to the Generation, Not the Display, of Content Addressable Video ................................... 20

    B.   The Identical Terms in Claim 2 of the '992 Patent and Claims 3 and 4 of the '514 Patent Cannot Be Given Inconsistent Meanings ......................................................... 22

**C.** The Construction of "Controllable Image Generator" as a "Controllable Video Recording Device" is Consistent with the Claim Language and the Specification's Use of "Controllable" and "Control Signals"....................................................................26

**D.** Patent Harbor Cannot Overcome Either the Presumption that Same Claim Terms Should Be Construed Consistently or the Presumption that Different Claim Terms Should Be Construed Differently ......................................................................................28

**E.** Under Patent Harbor's Interpretation of "Controllable Image Generator," Claim 2 of the '992 Patent is Invalid as Expressly Disclosed in the Prior Art...........................................................33

**V.** CONCLUSION..............................................................................35

# TABLE OF AUTHORITIES

Page

## FEDERAL CASES

*Abtox, Inc. v. Exitron Corp.*,
 131 F.3d 1009 (Fed. Cir. 1997).........................................................23

*Advance Transformer Co. v. Levinson*,
 837 F.2d 1081 (Fed. Cir. 1988).......................................................20

*Alpex Computer Corp. v. Nintendo Co. Ltd.*,
 102 F.3d 1214 (Fed. Cir. 1996).......................................................20

*Edwards Lifesciences LLC v. Cook Inc.*,
 582 F.3d 1322 (Fed. Cir. 2009).......................................................29

*Elkay Mfg. Co. v. Ebco Mfg. Co.*,
 192 F.3d 973 (Fed. Cir. 1999).........................................................23

*Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.*,
 279 F.3d 1022 Fed. Cir. 2002 ................................................... 23, 29

*Fonar Corp. v. Johnson & Johnson*,
 821 F.2d 627 (Fed. Cir. 1987).........................................................23

*Lighting Ballast Control, LLC v. Philips Elecs. N.A. Corp.*,
 500 Fed. Appx. 951 (Fed. Cir. Mar. 15, 2013) ...................................19

*Phillips v. AWH Corp.*,
 415 F.3d 1303 (Fed. Cir. 2005).................................................. 19, 20

*Vitronics Corp. v. Conceptronic, Inc.*,
 90 F.3d 1576 (Fed. Cir. 1996).........................................................19

## <u>STATEMENT OF RELATED CASES</u>

Pursuant to Federal Circuit Rule 47.5, Defendants-Appellees Audiovox Corporation, Audiovox Electronics Corporation, RadioShack Corporation, VIZIO, Inc., Imation Corporation, Best Buy Co., Inc., and Denon Electronics (USA), LLC state that no other appeal in the civil action on appeal in this matter was previously before this Court or any other appellate court. Defendants-Appellees Audiovox Corporation, Audiovox Electronics Corporation, RadioShack Corporation, VIZIO, Imation Corporation, Best Buy Co., Inc., and Denon Electronics (USA), LLC know of no other case pending in this Court or any other court that will directly affect or be directly affected by the Court's decision in this appeal.

## I.     STATEMENT OF THE ISSUE

Whether the District Court correctly construed the claim term "controllable image generator" as a "controllable video recording device."

## II.     STATEMENT OF THE FACTS

### A.     The Procedural History and Proposed Constructions

In the proceedings before the District Court, Plaintiff-Appellant Patent Harbor, LLC ("Patent Harbor") argued that no construction of the term "controllable image generator" was necessary.  (A2678, 2698).  Defendants-Appellees Audiovox Corporation, Audiovox Electronics Corporation, RadioShack Corporation, VIZIO, Inc., Imation Corporation, Best Buy Co., Inc., and Denon Electronics (USA), LLC (collectively, "Defendants") proposed that the term be construed as "a controllable camera."  (A2674).  The Magistrate Judge agreed with Defendants that the term required construction, and construed the term as a "controllable video recording device," a construction substantially similar to the Defendants' proposal.  (A17-22).  On March 16, 2012 the District Court adopted the Magistrate Judge's Opinion and Order.  (A33-34).  These are the claim constructions proposed by the parties and the construction adopted by the District Court:

| "Controllable Image Generator" | | |
|---|---|---|
| Magistrate Judge's and | Defendants' Proposed | Patent Harbor's |

820439

| District Court's Adopted Construction | Construction | Proposed Construction |
|---|---|---|
| controllable video recording device | a controllable camera | controllable video playback device [previously, no construction necessary] |

On this Appeal, Patent Harbor argues that "controllable image generator" should be construed as "controllable video playback device." *See* Patent Harbor Brief at 17.

**B.    The Claims of the '992 Patent**

The '992 Patent contains two claims that are directed to a method for generating content addressable video (claim 1) and an apparatus for generating content addressable video (claim 2). (A161). The claim term that is the subject of this Appeal, "controllable image generator," is present only in claim 2 and does not appear elsewhere in the '992 Patent, including the specification. (A149-161).

Claim 2 recites:

2. An **apparatus for generating content addressable video**, comprising:

a content image display which displays a content video image representative of an organization of content addressable video, the content video image having positions within the content video image corresponding to desired content of video images to be displayed;

a controller, in communication with the content image display, which generates control signals indicating content for video images in response to respective positions within the content video image; and

2

**controllable image generator**, responsive to the control signals, which produces video images in response to video image data indicated by the control signals corresponding to respective positions in the content video image.

(A161) ('992 Patent at claim 2) (emphasis added).

Notably, claim 2 is expressly directed to an apparatus for *generating* content addressable video, which is reflected in the "generating" language of "controllable image *generator*."

## C.    Brief Description of the '992 Patent

The '992 Patent is directed to the automatic generation of "content addressable video."[1]  (A155) ('992 Patent at 1:62-63).  The '992 Patent describes the automatic generation of content addressable video using a virtual space, the "content video image," to record frames of video by superimposing "virtual positions" of the video frames on an image.  *Id.* ('992 Patent at 1:55-56, 2:17-20). Once the content addressable video is generated, a user may then use a cursor to select a particular position on the virtual space, and the frame of video corresponding to that particular position on the virtual space can then be displayed. *Id.* ('992 Patent at 1:38-42 and 2:59-64).  The claims of the '992 Patent are directed to the *generation* of content addressable video, not the display of content addressable video after it is generated.  (A161) ('992 Patent at claims 1 and 2 at

---

[1] Defendants have also included a technology tutorial that describes the generation and display of content addressable video in further detail.  (A3162).

preamble).

In the invention of the '992 Patent, content addressable video is first generated and assembled. Figure 1 of the '992 Patent (reproduced below), and the corresponding portion of the specification, illustrates an apparatus that is used for the generation of content addressable video. (A150) ('992 Patent at Figure 1); (A156) ('992 Patent at 3:8-10) (emphasis added) ("FIG. 1 is a schematic diagram of a system for **generating**, or assembling content addressable video according to the present invention.").



FIG. 1

(A150) ('992 Patent at Figure 1).

As shown in Figure 1 of the '992 Patent, a computer (100) is coupled to a camera position control robot (101), which is used to control the position of the camera (109). (A156) ('992 Patent at 3:31-35). The camera position control robot is used to generate frames of video information of an object (102) within the

5

camera position grid (110). *Id.* ('992 Patent at 3:35-37).

The '992 Patent describes the system of Figure 1 as follows:

> Thus, the system of FIG. 1 can be generalized by providing cameras attached to control arms that can move within a confined space. A virtual map or content image of frame content is mapped in a graphic image displayed on a content monitor. Control of the cameras, and their movements and point of view, are functions of positioning of camera icons or cursors in the graphic content image.

*Id.* ('992 Patent at 4:8-14).

The specification also describes how the apparatus in Figure 1 is used to generate

content addressable video:

> According to another aspect, the present invention comprises an apparatus or method for generating content addressable video, which is the converse of assembling the content addressable video. In particular, according to this aspect, the content video image is first generated. Positions in the content video image are then translated by a control circuit into camera positioning signals. **A controllable camera, such as a robot mounted camera, then generates the frames of video in response to the position control signals derived from the content video image.** A processing unit then associates each frame of video data generated by the controllable camera, with positions in the content video image.

(A155) ('992 Patent at 2:29-40) (emphasis added).

Figure 3 of the '992 Patent also provides a flow chart of steps used to

generate content addressable video. (A156) ('992 Patent at 3:15-17) ("FIG. 3 is a

flow chart illustrating steps in a method for generating content addressable video

according to the present invention."). As shown in Figure 3, step 302 describes

controlling a **camera** position in response to keys representing positions in the

6

content video image and generating video frames:



FIG. 3

(A152) ('992 Patent at Figure 3).

After the content addressable video is generated and assembled, it can then be used for interactive display. As described in the specification, Figure 2 of the '992 Patent (reproduced below) is directed to an apparatus that is used to **display** content addressable video. (A156) ('992 Patent at 3:12-14) ("FIG. 2 is a schematic

7

diagram of a system for interactively displaying content addressable video according to the present invention.").



FIG. 2

(A151) ('992 Patent at Figure 2).

8

As shown in Figure 2 and described in the specification, a user can move a cursor (207) along the content video image (208) in the content monitor (200). (A156) ('992 Patent at 4:24-26). A perspective of the object indicated by the position of the cursor is then displayed on the video monitor (205). *Id.* ('992 Patent at 4:26-29). Patent Harbor initially proposed that "computer 201" in Figure 2 was the "controllable image generator," but changed its position at the Markman hearing to indicate that the video disk players (202 and 203) were the "controllable image generator." *See* Patent Harbor Brief at 19, n. 13

### D.    Brief Description of the '514 Patent

The '992 Patent is a continuation of application No. 08/243,046, which issued as U.S. Patent No. 5,684,514 (the "'514 Patent"). (A149). The '992 Patent and the '514 Patent share the same specification.

The '514 Patent contains 11 claims, including Claims 3 and 4 which, like Claim 2 of the '992 Patent, are directed to "apparatuses for generating content addressable video." (A147-148).

Claim 3 of the '514 Patent recites:

3. An apparatus for **generating** content addressable video, comprising:

> a content image display which displays a content video image representative of an organization of content addressable video, the content video image having positions within the content video image corresponding to desired content of video images to be displayed;

a controller, in communication with the content image display, which generates control signals indicating content for video images in response to respective positions within the content video image;

**controllable video image generator**, responsive to the control signals, which produces f[r]ames of video data, each frame determining a video image having the content indicated by the control signals corresponding to the respective position in the content video image;

video storage which stores frames of video data generated by the controllable video image generator in storage locations having addresses; and

data processing resources, the controllable video image generator and the controller, including resources that execute program steps which associate the addresses of the stored f[r]ames of video data with respective positions in the content video image.

(A147) ('514 Patent at Claim 3) (emphasis added).

Claim 4 of the '514 Patent depends on Claim 3, and recites:

4. The apparatus of claim 3, wherein the **controllable video image generator** comprises a robot mounted video camera.

*Id.* ('514 Patent at Claim 4) (emphasis added).

### E. **The Prosecution History**

#### 1. **The Prosecution History of the '514 Patent**

Throughout the prosecution history of the '514 Patent, the "controllable video image generator" is continuously referred to as element 109, a "camera," of Figure 1. (A150, A156) ('992 Patent at Figure 1 and 3:45-48).

##### a. **May 16, 1994 Preliminary Amendment**

Claims 3 and 4 of the '514 Patent were originally written as means-plus-

function claims. (A379-380). On May 16, 1994, in response to a rejection under

35 U.S.C. § 112, ¶ 1 from the examiner, the applicant amended his claims to

include physical structure, including the first introduction of the term "controllable

video image generator":

> 3. (Twice Amended) An apparatus for generating content addressable video, comprising:
>
> [means for generating] **a content image display which displays** a content video image representative of an organization of content addressable video, the content video image having positions within the content video image corresponding to desired content of video images to be displayed **(105)**;
>
> [control means] **a controller**, coupled to the [means for generating] **content image display**, [for generating] **which generates** control signals indicating a content for a video image in response to positions within the content video image **(101)**;
>
> controllable [means] **video image generator**, responsive to the control signals, [for generating] **which produces** frames of video data, each frame defining a video image having the content indicated by the control signals;
>
> **video** storage [means], coupled to the controllable [means, for storing] **video image generator which stores** frames of video data generated by the controllable [means] **video image generator** in storage locations having addresses **(103)**; and
>
> [means] **data processing resources**, coupled to the controllable [means] **video image generator** and the [control means, for associating] **controller which associates** the address of each frame of video data with a position in the content video image **(100, Fig. 3)**.
>
> 4. (Amended) The apparatus of claim 3, wherein the controllable [means] **video image generator** comprises a robot mounted video camera **(109)**.

(A379-380) (May 16, 1994 Preliminary Amendment).

The applicant supported this amendment by referring to the controllable

11

video image generator as the "robot mounted video camera" represented as element 109 of Figure 1of the '992 Patent. *Id.* In particular, the applicant represented to the patent examiner that "the structure in the specification which corresponds to the claimed elements is set out at the end of each element in the apparatus claims." (A383). In this case, the applicant thus represented that element 109 of Figure 1 is the structure in the specification which corresponds to the "robot mounted video camera." *Id.*

      **b.**    **May 12, 1995, April 16, 1996, and October 30, 1996 Office Actions**

In response to the applicant's amendments, the examiner rejected claims 3 and 4 of the '514 Patent under 35 U.S.C. §§ 102 and 103. (A389-390). The examiner stated that the "controllable video image generator" element was disclosed by "remote cameras 80 and controllers 34" in the prior art:

6. Claims 3, 6, 10, and 13 are rejected under 35 U.S.C. § 102(e) as being anticipated by Morgan (4,992,886).

Claims 3 and 10, Morgan discloses (figs.1 and 2) an apparatus for generating content addressable video, comprising:

a content image display (fig.2) (touch screen 30) which displays a content video image representative of an organization of content addressable video,

controller (processor 20)(video switcher 32) for generating control signals (col.3, lines 34-58);

controllable video image generator (remote cameras 80 and controllers 34) for generating frames of video data (col.3, lines 34-58); and

the data processing resources (20) for associating frames of video data generated by the controllable video generator (80)(34).

(A389).

The examiner issued a rejection on the same grounds, including the assertion that the element was disclosed by "remote cameras 80 and controllers 34," in an April 16, 1996 Office Action (A429-430) and in an October 30, 1996 Office Action (A455-456).

Eventually, the applicant argued successfully that the prior art did not disclose the first two elements of claim 3 and the examiner issued a Notice of Allowance on March 3, 1997. (A135, A464, A468). The '514 Patent issued on November 4, 1997. (A135).

13

2.     **The Prosecution History of the '992 Patent**

a.     **January 7, 1999 Response**

After filing the application that led to the '992 Patent, the applicant canceled

the originally filed claims, and added two new claims to the application, claims 14

and 15, that correspond to claims 1 and 2 of the issued '992 Patent.  While doing

so, the applicant stated that new claims 14 and 15 (corresponding to claims 1 and 2

of the issued '992 Patent) were "derived from claims granted in the parent

application."  (A596) ("Applicant has nevertheless canceled claims 1-13, and

added new claims 14 and 15 derived from claims granted in the parent application.

These claims are not new matter, and are believed in condition for allowance.").

b.     **January 11, 1999 Office Action**

On January 11, 1999, the examiner issued an obviousness-type double-

patenting rejection, stating that claims 14 and 15 of the '992 application

(corresponding to claims 1 and 2 of the issued '992 Patent) were "not patentably

distinct" from Claims 1 and 3 of the '514 Patent.  (A599) ("Claims 14 and 15 are

rejected under the judicially created doctrine of obviousness-type double patenting

as being unpatentable over claims 1 and 3 of U.S. Patent No. 5,684,514.")

To overcome this rejection, the applicant did not rebut the examiner's

assertion that the claims were not patentably distinct, but instead submitted a

terminal disclaimer on March 4, 1999, disclaiming the statutory term of the '992

14

Patent that would extend beyond the expiration date of the '514 Patent. (A601).

The '992 Patent issued shortly thereafter on November 2, 1999. (A149).

## III. <u>SUMMARY OF THE ARGUMENT</u>

In this Appeal, Patent Harbor seeks to overturn the District Court's correct construction of the claim term "controllable image generator" as a "controllable video recording device" and have this Court adopt a construction that is directly contrary to the claim language, the teachings of the specification, and the prosecution history of the '992 Patent. The invention of the '992 Patent is directed to the *generation*, i.e., recording, of content addressable video. Patent Harbor, however, seeks a construction that would impermissibly change the scope of the claims of the '992 Patent to read on the *display*, i.e., playback, of scene selection menus by DVD and Blu-ray players instead.

The parties' only dispute in this Appeal revolves around which of the embodiments described in the '992 Patent—Figure 1 ("generating" content addressable video) or Figure 2 ("interactively displaying" content addressable video)—is the embodiment claimed in claim 2 of the '992 Patent. The claim language, the specification, and the prosecution history overwhelmingly indicate that claim 2 is based on Figure 1 as the District Court held and that the District Court's construction of "controllable image generator" as a "controllable video recording device" is the proper construction.

Claim 2 of the '992 Patent is expressly directed to "[a]n apparatus for **generating** content addressable video." Similarly, Figure 1 illustrates a "system for **generating**, or assembling content addressable video." As shown in Figure 1, a robot mounted camera, *i.e.,* a "controllable video recording device," is controlled by a "camera position control" connected to a computer and is used to generate video images that correspond to an object from a specific position of the camera. Patent Harbor incorrectly claims that claim 2 of the '992 Patent, "[a]n apparatus for **generating** content addressable video," reflects the embodiment in Figure 2 of the '992 Patent – a "system for **interactively displaying** content addressable video." Patent Harbor's interpretation is inconsistent with both the specification and the claim language.

Furthermore, the prosecution history and claim language of U.S. Patent No. 5,684,514, the patent that issued from the parent application of the '992 Patent, confirm that a controllable image generator is a controllable video recording device. The language of claim 3 of the '514 Patent is nearly identical to the language of claim 2 of the '992 Patent, including the claim term at issue: "controllable video image generator" and "controllable image generator." Patent Harbor admits that the additional word "video" in "controllable video image generator" is of no particular significance, and that these terms are the same. Under established Federal Circuit law, these same claim terms should be

16

interpreted consistently. Claim 4 of the '514 Patent, which depends on and incorporates claim 3, further claims "wherein the controllable video image generator comprises a robot mounted video camera." The language of claim 4 is consistent with the District Court's construction of "controllable image generator" as a "controllable video recording device," but is entirely inconsistent with Patent Harbor's proposed construction of "controllable image generator" as a "controllable video image playback device."

Moreover, after filing the application that led to the '992 Patent, the applicant amended the claims to reflect the current version of the claims of the '992 Patent, stating that claim 2 of the '992 Patent was "derived from" claim 3 of the '514 Patent. The examiner clearly agreed that the claims were directed to the same subject matter and issued an obviousness-type double-patenting rejection, stating that these claims were "not patentably distinct." Instead of rebutting the examiner's assertions that these claims were not patentably distinct, the applicant submitted a terminal disclaimer, disclaiming the statutory term of the '992 Patent that would extend beyond the expiration date of the '514 Patent.

Patent Harbor's argument is based almost entirely on the mistaken assumption that the term "video image data" from claim 2 of the '992 Patent must be synonymous with the different term "frames of video data" from claim 3 of the '514 Patent. Thus, not only does Patent Harbor ask this Court to interpret terms the

parties agree are the same ("controllable video image generator" and "controllable image generator") differently across claims, but it purports to have overcome the presumption that these terms must be interpreted consistently by somehow overcoming the additional presumption that different claim terms must be interpreted differently, such that the different claim terms "video image data" and "frames of video data" should be interpreted as synonymous. Patent Harbor has not provided any good reason for either of its interpretations, let alone reasons sufficient to overcome two established canons of claim construction.

Moreover, interactive display systems, including the embodiment in Figure 2 that Patent Harbor alleges is the embodiment claimed in claim 2 of the '992 Patent, and how to implement such systems are *expressly* described by the specification of the '992 Patent as being disclosed in the prior art. Accordingly, if Patent Harbor's interpretation of "controllable image generator" is adopted, then this Court should simultaneously declare claim 2 of the '992 Patent invalid under 35 U.S.C. § 102.

Patent Harbor asks the Court to entirely ignore the overwhelming guidance of the claim language, the specification, and the prosecution history, and adopt a construction based on a complete reimagining and badly strained reinterpretation of the claims. As further detailed below, this Court should affirm the District Court's proper construction of "controllable image generator" as a "controllable video recording device."

820439

## IV.  **ARGUMENT**

Defendants agree with Patent Harbor that, currently, claim interpretation is a question of law reviewed *de novo*, but note that the Federal Circuit granted *en banc* review of the claim construction review standard in *Lighting Ballast Control, LLC v. Philips Elecs. N.A. Corp.,* 500 Fed. Appx. 951 (Fed. Cir. Mar. 15, 2013) (en banc).

The primary source of evidence for claim construction is the intrinsic evidence, *i.e.,* "the patent itself, including the claims, the specification and, if in evidence, the prosecution history." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Federal Circuit confirmed the primacy of intrinsic evidence in *Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) (en banc).  The decision reiterates that words used in a claim are generally given their ordinary and customary meaning; however, "the 'ordinary meaning' of a claim term is its meaning to the ordinary artisan after reading the entire patent." *See id*. at 1321.  *Phillips* emphasizes that the specification remains the "single best guide to understanding the meaning of a disputed term," "usually . . . dispositive" on claim construction.  *Id*. at 1314-17.  Thus, it is entirely appropriate "to rely heavily on the written description for guidance as to the meaning of the claims." *Id*. at 1317.

Additionally, the prosecution history can play an important role in claim

interpretation. *Phillips*, 415 F.3d at 1317. For example, statements made by an applicant during prosecution to obtain allowance of his claims may be pertinent to an understanding and interpretation of the claims as granted by the United States Patent and Trademark Office. *See, e.g.*, *Alpex Computer Corp. v. Nintendo Co. Ltd.*, 102 F.3d 1214, 1222 (Fed. Cir. 1996) (*citing Advance Transformer Co. v. Levinson*, 837 F.2d 1081, 1083 (Fed. Cir. 1988)).

Dissatisfied with the District Court's proper construction of the claim term "controllable image generator," Patent Harbor seeks to rewrite the claims, the specification and the prosecution history of the '992 Patent.

A.   <u>Claim 2 of the '992 Patent is Directed to the Generation, Not the Display, of Content Addressable Video</u>

As a threshold matter, the parties' dispute concerns which embodiment in the '992 Patent, Figure 1 or Figure 2, is the embodiment claimed in claim 2. The evidence from the claim language, the specification, and the prosecution history overwhelmingly indicate that Figure 1 is the embodiment claimed in claim 2.

Consistent with the District Court's construction of "controllable image <u>generator</u>," Claim 2 is directed to "[a]n apparatus for <u>generating</u> content addressable video." (A161) (emphasis added). The specification of the '992 Patent clearly distinguishes the *generation* of content addressable video (as reflected in the District Court's and Defendants' construction) from the subsequent

20

*display* of content addressable video (as reflected in Patent Harbor's construction).

This distinction between generating and displaying content addressable video is

made clear by the '992 Patent specification's description of Figures 1 and 2:

> FIG. 1 is a schematic diagram of a system for **generating**, or assembling content addressable video according to the present invention.

> FIG. 2 is a schematic diagram of a system for **interactively displaying** content addressable video according to the present invention.

(A156) ('992 Patent at 3:8-14) (emphasis added).

Even though claim 2, the only claim in which the term "controllable image

generator" appears in the '992 Patent, is expressly directed to "[a]n apparatus for

**generating** content addressable video," Patent Harbor argues that claim 2 is

directed to a controllable image generator that is used for the display, *i.e.,*

playback, of content addressable video. (A161) ('992 Patent at claim 2). The

preamble of claim 2, however, directly matches the description of Figure 1 of the

'992 Patent, not the description of Figure 2.

Patent Harbor, recognizing this clear distinction, rewrites the '992 Patent's

description of Figure 1, and the corresponding portions of the specification, as

directed to the "creation" of content addressable video, instead of the "generation"

of content addressable video, in a transparent attempt to disguise this fact. *See,*

*e.g.*, Patent Harbor Brief at 5. Indeed, the only time Patent Harbor acknowledges

that "generation of content addressable video" is equivalent to "creation of content

addressable video" is a single line describing the *generation* of content addressable video as part of the Magistrate Judge's claim construction opinion.  *See id.* at 22-23.  Based on the dispositive fact that Figure 1 and claim 2 are both directed to the *generation* of content addressable video alone, this Court should affirm the District Court's construction, consistent with the embodiment in Figure 1 that a "controllable image generator" is a "controllable video recording device."

**B.**     **The Identical Terms in Claim 2 of the '992 Patent and Claims 3 and 4 of the '514 Patent Cannot Be Given Inconsistent Meanings**

"[T]he same term or phrase should be interpreted consistently where it appears in claims of common ancestry."  *Epcon Gas Sys. Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1030 (Fed. Cir. 2002) (citing *Elkay Mfg. Co. v. Ebco Mfg. Co.,* 192 F.3d 973, 980 (Fed. Cir. 1999); *Abtox, Inc. v. Exitron Corp.,* 131 F.3d 1009, 1010 (Fed. Cir. 1997); *Fonar Corp. v. Johnson & Johnson,* 821 F.2d 627, 632 (Fed. Cir. 1987)).

Patent Harbor does not dispute that "controllable video image generator" means a "recording device such as a camera" in the context of claims 3 and 4 of the '514 Patent.  *See* Patent Harbor Brief at 43 ("No party disputes that claim 3/'514 is a content-addressable-video creation claim, or that the 'controllable video image generator' in claim 3/'514 comprises a recording device such as a camera.").  Patent Harbor also admits that the addition of the word "video" in "controllable

22

video image generator" in claim 3 of the '514 Patent, as compared to the term "controllable image generator" in claim 2 of the '992 Patent, is of no particular significance. *See id.* at 41, fn. 32. Patent Harbor further does not dispute that the '992 Patent is a continuation of the '514 Patent and that they share the same specification. *See id.* at 14 ("The '992 patent is a continuation of USP 5,684,514 ('the '514 patent'), and both patents share a common written description."). Yet, Patent Harbor argues that "controllable image generator" must be given an entirely different meaning from "controllable video image generator" in construing claim 2 of the '992 Patent, despite the fact that it agrees these terms are identical and that in claim 3, "controllable video image generator" is a recording device.

To illustrate the overwhelming similarity in words and context of Claim 2 of the '992 Patent and Claim 3 of the '514 Patent, Defendants provide the following element-by-element comparison:

| Claim 2 of the '992 Patent | Claim 3 of the '514 Patent |
|---|---|
| 2. An apparatus for generating content addressable video, comprising: | 3. An apparatus for generating content addressable video, comprising: |
| a content image display which displays a content video image representative of an organization of content addressable video, the content video image having positions within the content video image corresponding to desired content of video images to be displayed; | a content image display which displays a content video image representative of an organization of content addressable video, the content video image having positions within the content video image corresponding to desired content of video images to be displayed; |
| a controller, in communication with the | a controller, in communication with the |

| | |
|---|---|
| content image display, which generates control signals indicating content for video images in response to respective positions within the content video image; and | content image display, which generates control signals indicating content for video images in response to respective positions within the content video image; |
| **controllable image generator**, responsive to the control signals, which produces video images in response to video image data indicated by the control signals corresponding to respective positions in the content video image. | **controllable video image generator**, responsive to the control signals, which produces f[r]ames of video data, each frame determining a video image having the content indicated by the control signals corresponding to the respective position in the content video image; |
| | video storage which stores frames of video data generated by the controllable video image generator in storage locations having addresses; and |
| | data processing resources, the controllable video image generator and the controller, including resources that execute program steps which associate the addresses of the stored f[r]ames of video data with respective positions in the content video image. |

(A161) and (A147) (emphasis added).

Consistent with Defendants' proposed construction of "a controllable camera" and the District Court's construction of a "controllable video recording device" and contradicting Patent Harbor's proposed construction of "a controllable video playback device," dependent claim 4 of the '514 Patent states that the controllable [video] image generator could be a "robot mounted video camera":

4. The apparatus of claim 3, wherein the **controllable video image generator comprises a robot mounted video camera**.

(A147) ('514 Patent at claim 4).

A "robot mounted video camera" is consistent with the District Court's adopted construction of "controllable image generator" as a "controllable video recording device," but entirely inconsistent with Patent Harbor's incorrect proposed construction of a "controllable video playback device."

During the prosecution history, which Patent Harbor entirely ignores, the applicant and the patent examiner both recognized that claim 2 of the '992 Patent and claim 3 of the '514 Patent were directed to the same subject matter – *generating* content addressable video. When the applicant added claim 2 of the '992 Patent to the application in a January 7, 1999 response, he stated that the claim was "derived from claims granted in the parent application," *i.e.,* the application that led to the '514 Patent. (A596). In response, the examiner issued an obviousness-type double-patenting rejection in a January 11, 1999 Office Action, stating that claim 2 of the '992 Patent was "not patentably distinct." (A599). To overcome this Office Action, the applicant did not attempt to rebut the examiner's assertion that the claims were not patentably distinct, but instead submitted a terminal disclaimer on March 4, 1999, disclaiming the statutory term of the '992 Patent that would extend beyond the expiration date of the '514 Patent. (A601). Patent Harbor cannot repudiate these representations that the applicant

made to the United States Patent and Trademark Office to have claim 2 of the '992

Patent granted, and seek an entirely new and inconsistent meaning for this claim.

The term "controllable image generator" should be interpreted consistently across

these two patentably indistinct claims as a "controllable video recording device."

**C.** **The Construction of "Controllable Image Generator" as a**

**"Controllable Video Recording Device" is Consistent with the**

**Claim Language and the Specification's Use of "Controllable"**

**and "Control Signals"**

The specification of the '992 Patent only discloses the generation of control

signals by a controller during the generation of content addressable video, not

during the display of content addressable video. The second element of claim 2 of

the '992 Patent and claim 3 of the '514 Patent states:

> a controller, in communication with the content image display, which
> **generates control signals indicating content for video images in response
> to respective positions within the content video image**;

(A161) (A147) (emphasis added).

The actual term "control signals" appears five times in the specification of

the '992 Patent, each time in the context of a camera, not in the context of a video

playback device:

> A controllable camera, such as a robot mounted camera, then generates the
> frames of video in response to the position control signals derived from the
> content video image.   (A149) ('992 Patent at Abstract); (A155) ('992 Patent
> at 2:35-38).

26

820439

The camera, mounted on a robot, then traverses real space corresponding to the virtual space of the content video image in response to the control signals, while filming the transmission. (A155) ('992 Patent at 2:57-60).

The content image 106 can be generated before filming the object 102, and thereby used to generate camera position control signals to control the generation of video. (A156) ('992 Patent at 3:66- 4:1).

Next, the keys are used by the computer 100 to generate camera position control signals which control the robot to film the object in response to the keys (block 302). (A156) ('992 Patent at 4:48-50).

"Control signals" are not mentioned in the specification of the '992 Patent in the context of the *display* of content addressable video. In the context of displaying content addressable video, the specification only mentions the word "control" when referring to the control of a video switcher by a computer: "A video switcher 204 which is controlled by computer 201 selects output video from the video disks in the players 202 and 203." (A156) ('992 Patent at 4:19-21). Patent Harbor's identification of the "controller" that generates control signals as "computer 201" is completely unsupported.

820439

**D.** **Patent Harbor Cannot Overcome Either the Presumption that Same Claim Terms Should Be Construed Consistently or the Presumption that Different Claim Terms Should Be Construed Differently**

As this Court has held, "[a] word or phrase used consistently throughout a claim should be interpreted consistently." *Epcon,* 279 F.3d at 1030. Conversely, "[w]hen different words or phrases are used in separate claims, a difference in meaning is presumed." *Edwards Lifesciences LLC v. Cook Inc.,* 582 F.3d 1322, 1330 (Fed. Cir. 2009). Patent Harbor acknowledges both of these canons of claim construction, but relies on the narrow exception in *Epcon,* that the same claim terms used in different contexts may be construed differently. In *Epcon*, the word "substantially" was used in two different contexts: "substantially below" (indicating language of magnitude) and "substantially constant" (indicating language of approximation). *Id.* at 1031. The facts in *Epson* are entirely inapposite to the facts here, where the claim terms "controllable video image generator" and "controllable image generator" appear in the same location of the third element of both claim 2 of the '992 Patent and claim 3 of the '514 Patent, and both serve the same function of producing video images or frames of video data. (A161) ('992 Patent at claim 2); (A147) ('514 Patent at claim 3).

Patent Harbor's explanation for why a jury would understand the term "controllable image generator" to have a radically different meaning in the '992 Patent from the '514 Patent is based solely on its self-interested definition of "video image data" – that "video image data" and "frames of video data" must mean the same thing. Patent Harbor wants to have its cake and eat it too – it inconsistently argues that two claim terms the parties agree are equivalent ("controllable image generator" and "controllable video image generator") should be construed to refer to entirely different components, while arguing that two entirely different claim terms ("video image data" and "frames of video data") should be construed as being equivalent. Thus, not only must Patent Harbor overcome the presumption that two terms that the parties agree are the same ("controllable image generator" and "controllable video image generator") must be construed consistently, but it must also overcome the presumption that two claim terms that are different ("video image data" and "frames of video data") must be afforded different meanings. *Epcon,* 279 F.3d at 1030; *Edwards Lifesciences,* 582 F.3d at 1330. Patent Harbor has not, and cannot, overcome either of these well-established presumptions.

Patent Harbor argues that the "controllable image generator" in Claim 2 of the '992 Patent should be construed as entirely different from the "controllable video image generator" in Claim 3 of the '514 Patent, despite the fact these terms

29

are the same, because of allegedly "inconsistent use" of the term in the context

shown in bold and underlined below:

| Claim 2 of the '992 Patent | Claim 3 of the '514 Patent |
|---|---|
| **controllable image generator**, responsive to the control signals, **which produces video images in response to video image data indicated by the control signals** corresponding to respective positions in the content video image. | **controllable video image generator**, responsive to the control signals, **which produces f[r]ames of video data, each frame determining a video image having the content indicated by the control signals** corresponding to the respective position in the content video image; |

Patent Harbor argues that the term "video image data" in claim 2 of the '992

Patent is synonymous with the term "frames of video data" in claim 3 of the '514

Patent, although the term "video images," not "video image data," in claim 2 of the

'992 Patent is the clear counterpart to the term "frames of video data" in claim 3 of

the '514 Patent. Accordingly, Patent Harbor's argument is not supported by the

claim language.

Likewise, Patent Harbor's argument is not supported by the specification or

the prosecution history. Patent Harbor acknowledges that the term "video image

data" does not appear in the specification of the '992 Patent or the claims of the

'514 Patent, yet, it unilaterally assigns a meaning to this term as being the same as

"frames of video data." *See* Patent Harbor Brief at 46. However, Patent Harbor's

mistaken conclusion fails because it is based on Patent Harbor's mistaken

30

assumption that "video image data" must be interpreted as "frames of video data."

There is no valid basis for Patent Harbor's interpretation of "video image data" to mean "frames of video data" in the '992 Patent - "video image data" plainly means data, *i.e.,* information, about video images. In the context of claim 2 of the '992 Patent, the "controllable image generator" must "produce[] video images in response to video image data indicated by the control signals corresponding to respective positions in the content video image." (A161) ('992 Patent at claim 2). The "video image data" is just that – information indicated by the control signals corresponding to respective positions in the content video image. For example, according to the specification, "video image data" could be the "camera position" for the video image to be produced. (A156) ('992 Patent at 3:66-4:1) ("The content image 106 can be generated before filming the object 102, and thereby used to generate camera position control signals to control the generation of video."). The language of claim 1 of the '992 Patent, which Patent Harbor relies on to support its argument that "video image data" and "frames of video data" are synonymous, further supports Defendants' interpretation as the context of these claims clearly indicates that video image data refers to control signals:

| Claim 1 | Claim 2 |
|---------|---------|
| generating video data **in response to the control signals**, the video data defining one or more video images | controllable image generator, . . . which produces video images **in response to video image data** indicated by the |

31

| having the content indicated by the control signals; | control signals corresponding to respective positions in the content video image. |
|---|---|

(A161) ('992 Patent at claims 1 and 2) (emphasis added).

Patent Harbor also cites column 2, lines 1-4 of the '992 Patent as supporting

its argument that "video image data" is synonymous with "frames of video data":

> The present invention provides an apparatus and method for assembling content addressable video which is based on storing a plurality of frames of video data at addressable storage locations. Each **frame of video data** is stored with a tag which indicates the contents of the **video image defined by the associated frame**.

(A155) ('992 Patent at 1:66-2:4) (emphasis added); *see* Patent Harbor Brief at 46.

Notably, Patent Harbor excludes the first part of the cited sentence from its Brief,

which states that it is directed to "assembling" content addressable video, and then

proceeds to describe this portion as used for "recording" content addressable video.

*Id.* More importantly, this portion of the specification equates "frames of video

data" with "video images," not "video image data." (A155) ('992 Patent at 2:2-4).

The claim language further confirms that "frames of video data" and "video

images" are equivalent, as "frames of video data" and "video images" are the items

that are produced by the controllable image video generator in claim 3 of the '514

Patent and the controllable image generator in claim 2 of the '992 Patent,

respectively. (A147); (A161). Thus, the claim language and the specification both

820439

indicate that "frames of video data" and "video images" are not equivalent to "video image data."

The District Court's construction of "controllable image generator" as a "controllable video recording device" results in the only correct reading of the claim.

### E.     Under Patent Harbor's Interpretation of "Controllable Image Generator," Claim 2 of the '992 Patent is Invalid as Expressly Disclosed in the Prior Art

Patent Harbor's argument that the embodiment that is claimed in claim 2 of the '992 Patent is shown in Figure 2 of the '992 Patent ignores that the '992 Patent expressly describes interactive display systems, such as the one in Figure 2, as described in the prior art.  When describing Figure 2, the specification of the '992 Patent states that interactive display systems like the one shown in Figure 2 were disclosed in the prior art.  (A156) ('992 Patent at 4:34-36) ("Background concerning how to implement these interactive display systems can be found in the above cross-referenced U.S. Pat. No. 4,857,902."); *see also* (A155) ('992 Patent at 1:34-45).  Indeed, a comparison of Figure 5 of United States Patent No. 4,857,902, cross-referenced in the '992 Patent, and Figure 2 of the '992 Patent confirms that all of the components of Figure 2 were already known in the prior art:

820439



FIG.-5

(A165) (U.S. Patent No. 4,857,902 at Figure 5).



FIG. 2

(A151)('992 Patent at Figure 2).

Thus, Figure 2 of the '992 patent does not describe the invention of the '992 Patent, but instead describes the prior art. If this Court adopts Patent Harbor's interpretation, then claim 2 of the '992 Patent should also be found invalid under 35 U.S.C. § 102 as being anticipated by the prior art.

## V.    CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's construction of "controllable image generator" as a "controllable video recording device."

DATED:  August 19, 2013         GLASER WEIL FINK JACOBS
                                HOWARD AVCHEN & SHAPIRO LLP


                                By: _____
                                    ADRIAN M. PRUETZ
                                    *Attorneys for Defendant-Appellee*
                                    *VIZIO, Inc., on behalf of all Defendants-*
                                    *Appellees*

820439

## CERTIFICATE OF SERVICE

I hereby certify that on August 19, 2013, the foregoing was electronically filed using the Court's CM/ECF system. I further certify that on the same date a copy of the foregoing was served electronically via the Court's CM/ECF system on the counsel listed below:

Terril G. Lewis
tlewis@counselip.com
Keith A. Rutherford
krutherford@counselip.com
Daniel R. Peterson
dpeterson@counselip.com
Ngoc Linh Bui
lbui@counselip.com
WONG CABELLO, LUTSCH, RUTHERFORD & BRUCCULERI, LLP
20333 State Highway 249, Suite 600
Houston, TX 77070
*Counsel for Plaintiff/Appellant*
*PATENT HARBOR, LLC*

Eric M. Albritton
ema@emafirm.com
ALBRITTON LAW FIRM
111 West Tyler Street
Longview, TX 75601
*Counsel for Plaintiff/Appellant*
*PATENT HARBOR, LLC*

Adrian M. Pruetz

# CERTIFICATE OF COMPLIANCE

Counsel for Defendant-Appellee VIZIO, Inc. hereby certifies that the brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 6,639 words as counted by the word processing program used to prepare the brief, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

DATED: August 19, 2013       GLASER WEIL FINK JACOBS
                                     HOWARD AVCHEN & SHAPIRO LLP

By: _Adrian M. Pruetz_
             ADRIAN M. PRUETZ
             *Attorneys for Defendant-Appellee*
             *VIZIO, Inc., on behalf of all Defendants-*
             *Appellees*

820439